Amy J. Oliver (8785)
olivera@sec.gov
Daniel J. Wadley (10358)
wadleyd@sec.gov
Cheryl M. Mori (8887)
moric@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel.  801-524-5796
Fax: 801-524-3558

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> PLAINTIFF, <br><br> v. <br><br> BLACKBIRD CAPITAL PARTNERS, LLC, a Nevada Limited Liability Company, ANDREW D. KELLEY, an individual, and PAUL H. SHUMWAY, an individual, <br><br> DEFENDANTS. | **COMPLAINT** <br><br> Case No.: <br><br> Judge: |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint

against defendants Blackbird Capital Partners, LLC ("Blackbird"), Andrew D. Kelley ("Kelley"),

and Paul H. Shumway ("Shumway") (collectively, "Defendants") alleges as follows:

### INTRODUCTION

1.     This matter arises out of Blackbird's fraudulent conduct in the offer and sale of

securities.  Blackbird's principals, Kelley and Shumway, have solicited and continue to solicit

individuals to invest money with Blackbird, an entity that was registered as a Commodity

Trading Advisor ("CTA") and/or through a separate "Family and Friends" account, which Kelley

claims he manages as a proprietary trading fund.

2.      Kelley and Shumway have represented and continue to represent that Kelley's

trading has historically produced substantial rates of return and could do so in the future due to

Kelley's expertise in trading.

3.      Investments with Blackbird are passive and are supposed to be used to invest in

various security and futures instruments.  Investors pay investments of money, which are

purportedly pooled with other investor monies to make a profit through Blackbird's and Kelley's

expertise in trading futures. The investments are securities.

4.      Instead, investor funds have been used to pay returns to earlier investors and for

other expenses.

5.      From at least September 2014 through the present, Defendants have fraudulently

collected at least $3.1 million from more than two investors through the use of material

misrepresentations and omissions and a scheme to defraud investors.

6.      Defendants have made and continue to make material misrepresentations and

omissions regarding the amount of funds controlled by Blackbird, the use of investor funds, and

the past performance and expected profitability and safety of invested funds.  Defendants have

also used falsified documents to conceal their sophisticated scheme.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the

Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and 27

of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Utah.

8.      Venue for this action is proper in the District of Utah under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district and because Defendants reside in and transact business in this district.

9.      Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and courses of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

10.     Defendants' conduct took place in connection with the offer, purchase and/or sale of investment contracts issued by Blackbird, which are securities.

## DEFENDANTS

11.     **Blackbird Capital Partners, LLC** was formed as a Nevada limited liability company on July 15, 2013. Blackbird registered as a foreign LLC in Utah on July 1, 2015, but failed to file renewal as of October 26, 2016. Kelley and Shumway are listed as managers of both entities. Blackbird was registered as a member with the National Futures Association ("NFA"), approved on July 10, 2015, but its membership was withdrawn on September 4, 2016.

12.     **Andrew D. Kelley**, age 41, is a resident of Draper, Utah. Kelley is a founder and manager of Blackbird. Kelley purports to trade futures on behalf of investors for profit. From at least 2014 to the present, Kelley offered and sold investments to individuals either individually

or through his entity Blackbird.  Kelley is also the sole manager of **Tradetech Holdings, LLC** **("Tradetech")**, a Utah limited liability company ("LLC") formed on June 3, 2016, with the same address as Blackbird.  Kelley and Tradetech are also members of **Icon Capital Strategies, LLC ("Icon")**.  Icon is a Utah LLC that was formed on August 21, 2016 with the same address as Blackbird.  Icon has had an application pending to be a commodity pool operator with NFA since September 23, 2016.

13.   **Paul H. Shumway**, age 47, is a resident of Lehi, Utah.  Shumway is a founder and manager of Blackbird.  Shumway was a registered broker/dealer representative with Fidelity Brokerage Services or Fidelity Investments Institutional Services Company, Inc. from July 1993 through May 1998, but has not been affiliated with a broker/dealer since May 1998.  **Icon Capital Strategies, LLC ("Icon")** is a Utah LLC formed on August 31, 2016, headquartered in Draper, Utah, at the same address as Blackbird.  The members are Kelley, Shumway, and Tradetech Holdings, LLC.

14.   According to public records of the National Futures Association ("NFA"), Icon has a membership application pending with the NFA as of September 23, 2016. As of November 16, 2016, a Principal membership of Icon was approved, but Associated Person and NFA Associate Membership were still pending.

### STATEMENT OF FACTS

#### Background

15.   Kelley and Shumway formed Blackbird in July 2013 as a Nevada LLC.

16.   Kelley and Shumway are the owners and managers of Blackbird and have represented and continue to represent that Blackbird is a Commodity Trading Advisor ("CTA") registered with the National Futures Association ("NFA").

17.    Kelley and Shumway direct Blackbird's operations and represent themselves and Blackbird interchangeably to investors. Kelley and/or Shumway make decisions regarding how Blackbird operates and manages investor funds.

18.    Blackbird was registered as a member of the NFA from July 10, 2015 to September 4, 2016, when Blackbird withdrew its membership with the NFA.

19.    From at least September 2014, Blackbird, through Kelley and Shumway, has represented and continues to represent to investors and potential investors that Kelley is an expert trader and that he has previously developed algorithmic software that has been purchased for millions of dollars and was currently being used by a number of financial institutions, including JP Morgan Chase Bank and Wells Fargo Bank.

20.    Defendants represent to investors and potential investors that Shumway is a "licensed" individual that allows him to offer and sell investments in Blackbird to investors.

21.    Blackbird, through Kelley and Shumway, has represented and continues to represent that Kelley has developed a separate algorithmic software program for Blackbird to trade its own funds for its own and other investors' profit. Kelley claims that he has invested millions of dollars and thousands of hours developing the software, and that he is able to make substantial profits, and has made returns of up to 300% in one year.

22.    Blackbird, through Kelley and Shumway, claims to offer investments in futures and other securities and that it has a history of generating successful returns due to the expertise of Kelley and his algorithmic software program.

23.    Kelley claims to operate a separate "Family and Friends" trading account in which he allows family members and close friends to invest. Shumway has participated with Kelley in soliciting investors to invest in the "Family and Friends" fund as well as with Blackbird.

24.     Blackbird, through Kelley and Shumway, have solicited at least two investors, and likely many more, and have fraudulently raised at least $3.1 million from September 2014 through May 2016 through the use of material misrepresentations and omissions related to trading profits and use of investor proceeds.

25.     In October 2016, Kelley admitted to one investor that Kelley lost approximately $2 million of the investor's money.  In subsequent discussions, Kelley admitted that he used the investor's money to pay returns to earlier investors and to pay personal and business expenses. Kelley admitted that he did not invest the investor's funds as represented.

26.     Blackbird, through Kelley and Shumway, continues to solicit investor funds.  From November 17, 2016 to November 21, 2016, Kelley deposited at least $750,000 into his brokerage account.  These funds potentially came from investors who have invested funds into a fraudulent scheme.  From November 17, 2016 to November 22, 2016, Kelley lost approximately $100,000 of these funds by trading in his brokerage account.

## MATERIAL MISREPRESENTATIONS AND OMISSIONS

### Trading Expertise and Regulatory Compliance

27.     Defendants have represented and continue to represent that Kelley is an expert trader and has developed successful algorithmic software to minimize losses and maximize gains in futures for Blackbird investors.  Kelley claims he has invested millions of dollars and thousands of hours to develop the software.  Kelley and Shumway have claimed that Kelley had very few losses and had successfully traded for the past 3 years.  However, Kelley has now admitted he has suffered substantial undisclosed losses when trading investor funds.

28.     Defendants have represented and continue to represent that Blackbird and Kelley consulted an attorney who conducted due diligence and "vetted" the investments.

29.     Defendants negotiate with the investors to split the profits on earnings from their investments.

30.     Defendants have represented and continue to represent that Blackbird is registered and approved to trade futures and commodities and that Shumway is licensed to solicit and handle investor funds for Blackbird.

31.     Shumway was previously a licensed broker-dealer representative, but was not registered with the NFA as an associated person of Blackbird until July 2015, well after Blackbird and Kelley had solicited investments in Blackbird.  In addition, Blackbird's NFA membership was withdrawn on September 4, 2016, but this has not been disclosed to current or potential investors.

### Historic and Prospective Returns

32.     Defendants profess to investors that Kelley has an excellent trading record and has only had two months where he lost money out of the previous 36 months until mid-2016.  Kelley claims that his past returns range from 50% to 300%.

33.     Blackbird, through Shumway emailed account statements to a family of investors from Blackbird showing substantial returns on their invested funds.  According to these statements, as of the end of July 2016, the combined balance of the family of investors was $1,627,486.

34.     From approximately spring of 2016, Kelley sent daily emails to at least one investor showing substantial returns.  Kelley represented that the investor had a balance of approximately $2.7 million from his original $2 million investment based on these returns.

35.     As of October 31, 2016, Kelley's brokerage account at Trade Station Securities, in which he purported to trade the "Family and Friends" fund investments, held a total of $44,991.58.

36.     Therefore, the statements and emails sent by Shumway and Kelley, on behalf of Blackbird, contained false information about principal and returns on invested funds.

37.     Defendants have failed to disclose to current or potential investors that Kelley's trading has lost substantial amounts of money.  In October 2016, Kelley confessed to one investor that he lost $6 million of investor funds and Kelley's own money through his trading.

38.     Kelley provided a document to at least one investor that purportedly represented an account statement for Kelley's brokerage account.  The document was for June 2016 and showed an opening balance of $950,000 and losses of $813,596.  The document provided by Kelley was altered and false because the actual statement from the brokerage firm indicates the opening balance was $150,000 and losses for the period were $513,596.

39.     Despite this knowledge, Kelley still asserts he can make any lost funds back by continuing to trade investor funds.  Kelley claims that he currently trades 23 hours per day, 5 days per week.

## Amount of Funds Traded

40.     Defendants claim that all investment monies will be put into a pooled fund to trade futures and that Blackbird and Kelley split profits with investors.

41.     Kelley asserts that he conducts trading for two accounts – the "Family and Friends" trading account and the Blackbird "X-1" trading account.  Kelley claims he manages $4-6 million for 10 to 15 investors in the "Family and Friends" trading account and has more than $2 million in the Blackbird "X-1" trading account.

42.     Defendants claim that investments are passive and that returns will be paid through profits through Kelley's efforts in his profitable trading in securities, in the form of investment contracts.

43.     In reality, Kelley conducted trading activities in only a single account at TradeStation Securities ("Tradestation"). The TradeStation account is in the name of Kelley, not Blackbird.

44.     Contrary to Kelley's representations, his brokerage records show that Kelley made no trades prior to June 2016 and show that Kelley suffered substantial losses for four months in 2016 in which he conducted trades.

45.     Blackbird, Kelley, and Shumway each have an account at Dorman Securities. However, those accounts are inactive.

46.     Kelley's representations that he trades between $4 and $6 million in his "Family and Friends" trading account and more than $2 million in Blackbird's "X-1" trading account are false and misleading.

### Use of Investor Funds

47.     In October and November 2016, Kelley admitted that investor funds were placed into Blackbird's bank account, but that Kelley used those funds to pay earlier returns to investors and other personal and business expenses, including attorney's fees for Blackbird.

48.     Kelley has now admitted that he paid returns to investors by using later investor funds and claims he has also used his own money to pay returns to investors. Kelley has also admitted he has used investor funds for personal draws and for business expenses.

49.     Defendants' representations related to the use of investor funds are false and misleading.

## Materiality of Misrepresentations and Omissions

50.    Defendants' misrepresentations to investors and potential investors are material because investors would find it important to their investing decisions that Kelley has lost substantial amounts of investor monies, that Blackbird does not have requisite licensing with the NFA, and that Defendants have used investor monies to pay returns to earlier investors and for other personal and business expenses.  In fact, two investors have stated they would not have invested with Defendants but for these representations.

## Ongoing Conduct

51.    Defendants continue to solicit investors.  Kelley has admitted his falsehoods and that he lied to investors about his returns and use of funds, but represents that he can pay back any losses to investors by continuing to trade.

52.    In early October 2016, Kelley told one investor, "I shouldn't have control of this kind of cash and the ability to trade it."  In later statements, Kelley stated, "I am delusional.  I am a compulsive liar.  I am all these terrible things.  I have turned into a monster."  Yet Kelley continues to solicit investor funds through misrepresentations and omissions and his fraudulent scheme with Blackbird and Shumway participating.

53.    As late as November 17, 2016, Kelley disclosed that he was trying to raise money from others in order to pay back earlier investors.  This could be in the form of loans or additional investments by unwitting investors.

54.    In November 2016, Kelley has stated that any money he raises will be used to pay back earlier investor losses and to use to trade to make more profits.  He states he is "absolutely" still trying to raise money for X-1 (the Blackbird fund).

55. On or about November 15, 2016, Kelley represented to one potential investor that Blackbird would be meeting with a group of potential investors on November 10, 2016 to solicit them through a "lunch and learn" presentation. He represented to the potential investor that he trades about $30 million in various funds trading in "U.S. futures, oil, gold, the S&P mini, some currency futures as well." On the same day, Kelley agreed to meet with a potential investor with Shumway on November 17, 2016 to pitch the investment and stated that Shumway, as the licensed representative, had to be in attendance. Kelley later cancelled the meeting to be rescheduled.

## Scienter of Blackbird and Kelley

56. On the same day, Kelley transferred $450,000 into his brokerage account, and an additional $300,000 was deposited on November 21, 2016. This money likely came from investors. From November 17, 2016 through November 22, 2016, Kelley lost approximately $100,000 in the account through his trading activities.

57. Kelley knew his representations were false and misleading at the time he made them because he was in possession of the true facts. Kelley's actions can be attributed to Blackbird because Kelley is an owner and manager of Blackbird and represents that he and Shumway control Blackbird.

## Negligence of Shumway

58. Shumway knew or should have known of the fraudulent scheme and was at least negligent in failing to verify information with regard to returns and use of proceeds prior to soliciting investors with those representations. As a principal and purportedly licensed individual for Blackbird, Shumway should have had ready access to such information and could easily have verified such.

## FIRST CAUSE OF ACTION
## EMPLOYMENT OF A DEVICE, SCHEME, OR ARTIFICE TO DEFRAUD
### Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)(1))]
### by Blackbird and Kelley

59.     The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 58 above.

60.     Defendants Blackbird and Kelley, by engaging in conduct described above, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter, employed devices, schemes, or artifices to defraud.

61.     By reason of the foregoing, Defendants Blackbird and Kelley, directly or indirectly, violated, and unless restrained and enjoined by this Court, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## SECOND CAUSE OF ACTION
## FRAUD IN THE OFFER OR SALE OF SECURITIES
### Violations of Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)]
### by Blackbird, Kelley, and Shumway

62.     The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 58 above.

63.     Defendants, by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

64.     By reason of the foregoing, Defendants, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)].

## THIRD CAUSE OF ACTION
## FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b), and (c)]
### by Blackbird and Kelley

65.     The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 58 above.

66.     Defendants Blackbird and Kelley, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, employed devices, schemes, or artifices to defraud, or engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

67.     By reason of the foregoing, Defendants Blackbird and Kelley violated, and unless restrained and enjoined will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b), and (c)].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the violations charged herein.

### II.

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily, and permanently enjoin Defendants and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or

otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 17(a)(1), (2) and (3) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5(a), (b) and (c) thereunder, and Sections 206(1), (2), and (4) of the Advisers Act and Rule 206(4)-8 thereunder.

### III.

Issue, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, orders that temporarily, preliminarily and permanently enjoin Defendants and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from transferring, changing, wasting, dissipating, converting, concealing, or otherwise disposing of, in any manner, any funds, assets, claims, or other property or assets owned or controlled by, or in the possession or custody of Defendants.

### IV.

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently restrain and enjoin Defendants, and each of them, and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, books, records, computer programs, computer files, computer printouts, correspondence, including e-mail, whether stored electronically or in hard copy, memoranda, brochures, or any other documents of any kind that pertain in any manner to the business of Defendants.

## V.

Enter an order directing Defendants, and each of them, to pay civil money penalties pursuant to Section 20(d) of the Securities Act, Section 21(d)(3) of the Exchange Act, and Section 209(e) of the Advisers Act.

## VI.

Grant such further equitable relief as this Court deems just, appropriate, and necessary, including, but not limited to, a freeze of assets, an accounting, and the acceleration of discovery, including the forthwith production of documents.

## VII.

Enter an order directing Defendants to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains.

## VIII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated November 28, 2016.

Respectfully submitted,

Amy J. Oliver
Daniel J. Wadley
Cheryl M. Mori
Attorneys for Plaintiff
Securities and Exchange Commission